UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL D. JONES,<br><br>        Plaintiff,<br><br>v.<br><br>FIRST ADVANTAGE BACKGROUND SERVICES CORP.<br><br>        Defendant. | Case No. 3:23-cv-00968<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Michael D. Jones ("Plaintiff" or "Mr. Jones") by and through his counsel brings the following Complaint against First Advantage Background Services, Corp. ("Defendant" or "First Advantage") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of employment background check reports that Defendant published to Plaintiff's potential employers, which falsely portrayed Plaintiff as a convicted felon.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's prospective employers that Plaintiff was convicted of felony armed robbery. Defendant's reporting is grossly inaccurate and untrue.

1

4. Plaintiff has never been convicted of a felony in his life.

5. Plaintiff's prospective employers denied Plaintiff's job applications after receiving employment background check reports from Defendant, which included the inaccurate felony conviction, which does not belong to Plaintiff.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Madison County, Connecticut regarding the felony conviction prior to publishing Plaintiff's reports to his prospective employers.

7. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal record *belongs to a different consumer* who is wholly *distinguishable from Plaintiff by their middle name and Social Security Number*.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's reports being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Defendant's inaccurate reports cost Plaintiff *at least two* good paying jobs, benefits, and job security.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check reports; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep;

lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – **the criminal record that does not belong to him** – was inaccurate and delete the disputed information from the subject employment reports, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

13. Michael Jones ("Plaintiff" or "Mr. Jones") is a natural person residing in West Hartford, Connecticut, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. First Advantage Background Services, Corp. ("Defendant" or "First Advantage") is a Florida corporation doing business throughout the United States, including the State of Connecticut and in this District, and has a principal place of business located at 1 Concourse Parkway NE, Suite 200, Atlanta, GA 30328. First Advantage can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling

information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the ones Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

31.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

32.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33.     Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34.     Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

---

[1] CFPB, *Market Snapshot: Background Screening Reports* (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

36. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's reports would have made clear that Defendant was reporting a felony conviction that belonged to an unrelated consumer who has a different middle name and Social Security Number.

39. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with United Parcel Service

40. In or around February 2023, Plaintiff resigned his then employment so that he could care for his newborn baby and partner. In or about mid-May 2023, Plaintiff applied for full-time employment for a package handling position with United Parcel Service ("UPS").

41. Upon applying to UPS, Plaintiff successfully completed the application process.

42. On or prior to May 17, 2023, UPS extended a job offer to Plaintiff for the position to which he applied. The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

### Defendant Published an Inaccurate Background Check Report to United Parcel Service

43. UPS contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

44. On or about May 17, 2023, UPS ordered a criminal background check on Plaintiff from First Advantage.

45. On or about May 18, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to UPS.

46. Within that employment report, Defendant published inaccurate information about Plaintiff.

47. Specifically, Defendant's employment report about Plaintiff included a felony armed robbery conviction from Madison County, Connecticut.

48. The criminal conviction reported by Defendant about Plaintiff to UPS ***does not*** belong to Plaintiff.

49. Plaintiff has never been charged with or convicted of a felony in his life.

50. A cursory review of the widely available underlying public court records confirms that the record belongs to an unrelated male, Michael Anthony Jones ("Convicted Felon Jones").

51. Had Defendant actually consulted or obtained the widely available underlying court records regarding the conviction, it would have seen obvious discrepancies between Convicted Felon Jones and Plaintiff.

52. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Jones include the following:

 (a) Plaintiff's legal name is "Michael ***Deshone*** Jones" and the criminal record belongs to a "Michael ***Anthony*** Jones" which is both clearly indicated on the face of the employment report and in the widely available court records from Madison County, Connecticut;

8

(b) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject employment report, is entirely different than that of Convicted Felon Jones.

53. The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

54. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal conviction belongs to an unrelated individual with a different middle name and Social Security Number than Plaintiff.

55. Further, the commonality of Plaintiff's name, both his first name (Michael) and last name (Jones) should have compelled Defendant to engage in a more robust matching procedure requiring more points of correlation before so quickly labeling Plaintiff as a felon.

56. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**United Parcel Service Rescinded Plaintiff's Job Application**

57. Sometime after receipt of Defendant's employment purposed report about Plaintiff, a UPS representative called Plaintiff and informed him that there was an issue with his background check.

58. Plaintiff was confused and distressed by this communication – Plaintiff knew he didn't have a criminal record.

59. On or about May 19, 2023, Plaintiff received a letter from UPS with a copy of the employment background check report enclosed.

60. Plaintiff was shocked and humiliated upon reviewing and realizing that the *serious criminal conviction of another*, namely Convicted Felon Jones, was published in the employment report Defendant sold about Plaintiff to UPS.

61. Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Jones's serious criminal conviction reported on the subject employment report – specifically, the impact of the same on his future.

62. Specifically, Defendant matched Plaintiff and Convicted Felon Jones and published the criminal record of Convicted Felon Jones onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer.  This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to UPS, but Defendant failed to perform even a cursory review of such information.

### Plaintiff Applies for a Job with FedEx

63. Plaintiff was deeply troubled by Defendant's inaccurate report and the resulting adverse action taken by UPS in reliance on the same, but Plaintiff was also in a hurry to return to work to ensure he provided for his young family.

64. Around the same time that Plaintiff had applied to work for UPS, he had also submitted an employment application for full-time employment as a package handler for FedEx.

65. On or about mid-May 2023, FedEx extended a job offer to Plaintiff for the position to which he applied.  The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

### Defendant Published an Inaccurate Background Check Report to FedEx

66. FedEx also contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

67. On or about May 17, 2023, FedEx ordered a criminal background check on Plaintiff from First Advantage.

68. On or about May 31, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to FedEx.

69. Within that employment report, Defendant once again published inaccurate information about Plaintiff.

70. Specifically, Defendant's employment report about Plaintiff included the same felony armed robbery conviction from Madison County, Connecticut, which was published to UPS, and which appeared in the employment report as follows:

| | |
|---|---|
| Case Reference # | 20060636 |
| Case Date | 10/Nov/2006 |
| Name on File | MICHAEL JONES |
| SSN on File | XXX-XX-XXXX |
| DoB on File | XX/XX/XXXX |
| Charge | ARMED ROBBERY |
| Charge Type | FELONY |
| Disposition | GUILTY |
| Disposition Date | 22/Jan/2008 |
| Sentence | PRISON 15 YEARS, TO SERVE 10 YEARS; PROBATION 5 YEARS; COSTS 75; FEES 219.5 |

71. The criminal conviction reported by Defendant about Plaintiff to FedEx *does not* belong to Plaintiff.

72. Plaintiff has never been charged with or convicted of a felony in his life.

73. A cursory review of the widely available underlying public court record confirms that the records belong to an unrelated male, Convicted Felon Jones.

11

74. Had Defendant actually consulted or obtained the widely available underlying court records regarding the conviction, it would have seen obvious discrepancies between Convicted Felon Jones and Plaintiff.

75. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Jones include the following:

    (a) Plaintiff's legal name is "Michael *Deshone* Jones", and the criminal records belong to a "Michael *Anthony* Jones" which is both clearly indicated on the face of the employment report and in the widely available court records from Madison County, Connecticut;

    (b) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject employment report is entirely different than that of Convicted Felon Jones.

76. The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

77. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal conviction belongs to an unrelated individual with a different middle name and Social Security Number than Plaintiff.

78. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**FedEx Denied Plaintiff's Job Application**

79. On or about June 6, 2023, FedEx issued a Pre-Adverse Action Notice to Plaintiff stating that FedEx was considering taking adverse action on Plaintiff's employment application based upon information contained in the First Advantage Report.

80. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the serious criminal conviction of another, namely Convicted Felon Jones, was published in the employment report Defendant sold about Plaintiff to FedEx.

81. Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Jones's serious criminal conviction reported on the subject employment report – specifically, the impact of the same on his future.

82. Specifically, Defendant matched Plaintiff and Convicted Felon Jones and published the criminal record of Convicted Felon Jones onto the employment report about Plaintiff and sold that report *for a second time in as many weeks* to Plaintiff's prospective employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to FedEx, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Employment Reports**

83. On or about June 5, 2023, desperate to secure employment with United Parcel Service and FedEx and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone with Defendant.

84. Plaintiff identified himself and provided information to Defendant to support his dispute.

13

85. Plaintiff specifically disputed the criminal record of Convicted Felon Jones.

86. Plaintiff specifically stated that the criminal record of Convicted Felon Jones does not belong to Plaintiff.

87. Plaintiff specifically asked Defendant to investigate and delete Convicted Felon Jones's criminal record from any employment report about Plaintiff.

**Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Reports**

88. As of the filing date of this Complaint, Plaintiff has not received any correspondence from Defendant confirming that it has reinvestigated Plaintiff's dispute.

89. Upon information and belief, Defendant failed to issue a corrected employment report to UPS and FedEx.

90. Upon information and belief, and despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's June 5, 2023, dispute and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

91. Because Defendant failed to issue corrected employment reports, UPS and FedEx did not reinstate their job offers to Plaintiff.

92. But for Defendant's inaccurate employment reports, Plaintiff's job offers would have proceeded to hiring actions, and Plaintiff would have been spared the humiliation, embarrassment, and stress.

93. Defendant's false reports cost Plaintiff a promising, well-paying job with FedEx and UPS.

94. Moreover, the positions with FedEx and UPS were full-time and Plaintiff was set to earn $19.50 per hour with a competitive benefits package. More importantly, both employers

offered a third shift, which would have allowed Plaintiff to earn some income and help take care of his baby, while his partner is working.

95.     Plaintiff also was excited at the prospect of working for FedEx and UPS. Plaintiff planned to obtain a commercial driver's license to allow him to eventually advance to a driver's position with either company.

96.     Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, and despite Plaintiff's continued efforts to seek employment, Plaintiff has remained unemployed. Due to Plaintiff's lack of income, Plaintiff and his family are forced to rely upon his partner's income entirely, which has caused stress and strain in the relationship as they want to be able to provide care consummate with a two-person income for their newborn child.

97.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

98.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check reports; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**
**COUNT I**

**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

99. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

100. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

101. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

102. At all times pertinent hereto, each of the above-mentioned employment reports were a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

103. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

104. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check reports; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

105. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

106. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

107. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

108. The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

109. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

110. On at least one occasion in June 2023, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct and/or delete the inaccurate information in the employment reports that are patently inaccurate, misleading, and highly damaging to his, namely, stating that he is a convicted felon.

111. In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment reports and refused to correct the employment reports at issue.

112. Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject employment reports; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

113. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check reports; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

114. Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

115. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: July 21, 2023

*/s/ McKenzie Czabaj*
McKenzie Czabaj, CT#31489
**CONSUMER ATTORNEYS**
8245 N. 85th Way
Scottsdale, Arizona 85258
Email: mczabaj@consumerattorneys.com
Phone: (480) 626-2376
Fax: (718) 715-1750